# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CATALINA SALMERON, et al.,[1] | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 13–1615 (RBW) |
| | ) | |
| DISTRICT OF COLUMBIA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

The plaintiffs brought this suit against the Government of the District of Columbia (the "District") to recover attorneys' fees and costs incurred during administrative proceedings conducted under the Individuals with Disabilities Education Act (the "IDEA"), 20 U.S.C. § 1400 (2012). Amended Complaint for Attorneys' Fees and Costs ("Am. Compl."). Currently before the Court is the Plaintiffs' Motion for Default Judgment ("Pls.' Mot") pursuant to Federal Rule of Civil Procedure 55(b) against the District, and seeking an award of $505,891.86 in attorney's fees and costs under the fee-shifting provision of the IDEA. See 20 U.S.C. § 1415; see also Pls.' Mot. at 1; Memorandum in Support of Plaintiffs' Motion for Partial Dismissal ("Pls.' Mot. for Partial Dismissal") at 2. Upon careful consideration of the plaintiffs' submissions,[2] and for the

---

[1] Originally there were eight plaintiffs in this action: Catalina Salmeron, Janine Coleman, Kathryn Flythe, Koshi Wade, Ladine Everett, Tai Coates, Tykia Dickeron, and Icia Liriano. See generally Am. Compl. However, on August 8, 2014, the Court dismissed Tykia Dickerson's claims. See Order, ECF No. 13.

[2] In addition to the filings already identified, the Court also considered: (1) the Return of Service/Affidavit, ECF Nos. 4, 6; (2) the Affidavit in Support of Default, ECF No. 9; (3) the Clerk of this Court's Entry of Default, ECF No. 10; (4) the Court's August 8, 2014 Order, ECF No. 13; and (5) the Memorandum in Support of Plaintiffs' Motion for Default Judgment ("Pls.' Mem.").

reasons set forth below, the Court finds that the plaintiffs' motion must be granted in part, denied in part, and held in abeyance in part.

## I.  BACKGROUND

"Each [p]laintiff is a parent of a child eligible for special education or of an adult student eligible for special education."  Amended Complaint ("Am. Compl.") ¶ 3, ECF No. 3.  Between June 19, 2012, and October 16, 2013, the plaintiffs "prevailed in IDEA litigation" brought against the District, and each "receiv[ed] final relief ordered in a Hearing Officer's Determination ('HOD')."  Id. ¶¶ 10–11 (internal quotations omitted).  On December 19, 2013,[3] pursuant to 20 U.S.C. § 1415(i)(3)(B), the plaintiffs filed the Amended Complaint in this case requesting that this Court "award the [p]laintiffs the reasonable fees and costs incurred in their IDEA litigation," as well as "the reasonable fees and costs of this action" and "all other relief [this] Court deems just."[4]  See Am. Compl. at 3.  The attorney's fees sought by the plaintiffs resulting from services provided in the eight administrative proceedings total $563,976.91.[5]  See Pls.' Mot. at 1.  The plaintiffs thereafter filed a motion for partial dismissal, requesting that the

---

[3] The original Complaint was filed on October 22, 2013, see Compl., and the Amended Complaint was filed on December 19, 2013, see Am. Compl. at 1.

[4] The attorneys' fees and costs are for legal services provided by attorneys Kiran Hassan and Juan Fernandez.  See Pls.' Mot., Exhibit ("Ex.") 2, Verified Statement of Kiran Hassan ("Hassan Decl.").  The plaintiffs unacceptably fail to provide the Court with an accounting delineating the exact number of total hours billed specifically by attorney Hassan as opposed to the number of hours specifically billed for services provided by attorney Fernandez.  See generally Pls.' Mot., Ex. 1 ("Invoice").  Additionally, the plaintiffs' through their attorneys' fail to provide the Court with an accounting delineating the exact number of hours billed in each of the eight separate cases.  See id.  They elect instead to submit a forty-two page invoice consisting of numerous line items and indicate the total amount due for each case, see id., leaving the Court with two options:  (1) independently tabulate the distribution of work performed by each attorney in each of the eight cases; or (2) require the plaintiffs' attorneys to resubmit their bill providing the requisite information.  Given that it is the plaintiffs' burden to demonstrate that the number of hours expended were reasonable, and in the interest of judicial efficiency, the Court chooses option two.  Thus, prior to being awarded any attorneys' fees, the plaintiffs must submit an updated accounting to the Court for its review.

[5] The plaintiffs' motion indicates that the total amount of fees and costs requested using the amount set forth in the Amended Complaint, $540,555.41, is inaccurate due to a miscalculation in the fees incurred providing representation to Ms. Liriano.  See Pls.' Mot. at 1 n.1.

Court dismiss the claim for fees and costs associated with the representation provided to plaintiff Tykia Dickerson, and amending the total amount of requested attorneys' fees to $505,891.86. See Pls.' Mot. for Partial Dismissal at 2.  On August 8, 2014, the Court granted this motion and dismissed Tykia Dickerson's claim.  Order, ECF No. 13.

The plaintiffs served their Amended Complaint on "Alex Curtis, who [according to their private process server] is designated by law to accept service of process on behalf of [the] District of Columbia on [December 23, 2013]."  Return of Service/Affidavit, ECF Nos. 4, 6. However, the District has failed to answer the Amended Complaint or otherwise file a defense against the plaintiffs' Amended Complaint.  Thus, on March 5, 2014, upon the plaintiffs' request, the Clerk of this Court entered a default against the District.  Clerk's Entry of Default, ECF No. 10.  Thereafter, on April 10, 2014, the plaintiffs filed the motion now before the Court, requesting that the "Court grant them a default judgment in the amount of [$505,891.86]," Pls.' Mot. at 1, as well as "additional fees for time reasonably devoted to obtaining attorney[s'] fees," Pls.' Mem. at 7, and an "order that the District pay an additional $4,000.00 for each delay of a month or part thereof in payment," id.  The defendant has not challenged the entry of the default or opposed the plaintiffs' motion for a default judgment.  On August 8, 2014, in an abundance of caution, this Court entered an Order requiring that the defendant "show cause in writing on or before September 1, 2014, why the plaintiffs' motion for a default judgment should not be granted."  See Order, ECF No. 13, at 3.  Inexplicably, the defendant has not responded to the show cause order, and to date has not otherwise challenged the entry of a default judgment.

## II.  STANDARD OF REVIEW

When a defendant fails to respond or defend against a case or otherwise engages in dilatory tactics, the plaintiff may invoke the Court's power to enter a default judgment by first

seeking the entry of a default.  See Fed. R. Civ. P. 55(a); Peak v. District of Columbia, 236

F.R.D. 13, 15 (D.D.C. 2006) (citing Keegel v. Key West & Caribbean Trading Co., 627 F.2d

372, 375 n.5 (D.C. Cir. 1980)); see also Jackson v. Beech, 636 F.2d 831, 836 (D.C. Cir. 1980)

("The default judgment must normally be viewed as available only when the adversary process

has been halted because of an essentially unresponsive party." (citation and alteration omitted)).

The Federal Rules of Civil Procedure provide for the entry of a default when "a party against

whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . ."

Fed. R. Civ. P. 55(a).  And Rule 55 sets forth a two-step process for a party seeking a default

judgment: first, the entry of a default, followed by entry of a default judgment.  Fed. R. Civ. P.

55(a), (b); Jackson, 636 F.2d at 835; see also 10A Charles Alan Wright et al., Federal Practice

and Procedure § 2682 (3d ed. 2008) (stating that, before "obtaining a default judgment under

either Rule 55(b)(1) or Rule 55(b)(2), there must be an entry of default as provided by Rule

55(a)").  Thus, when a defendant has failed to respond to a complaint or otherwise defend against

an action, the plaintiff may request that the Clerk of the Court enter a default against the

defendant.  Fed. R. Civ. P. 55(a).  Once the Clerk enters the default pursuant to Rule 55(a), Rule

55(b) authorizes either the Clerk or the Court to enter a default judgment against the defendant.

Id. 55(b).  In this Circuit, "[t]he determination of whether [a] default judgment is appropriate is

committed to the discretion of the trial court."  Fanning v. C & L Serv. Corp., 297 F.R.D. 162,

166 (D.D.C. 2013) (quoting Int'l Painters & Allied Trades Indus. Pension Fund v. Auxier

Drywall, LLC, 531 F. Supp. 2d 56, 57 (D.D.C. 2008)) (internal quotations omitted).

Despite the plaintiffs' ability to acquire a judgment by default, there are "strong policies

favoring the resolution of genuine disputes on their merits . . . ."  Jackson, 636 F.2d at 835; see

Peak, 236 F.R.D. at 15 (noting the inherent unfairness of awarding judgment against a party for

4

mere filing delays).  "However, while courts do not favor default judgments and will only

resolve cases in this manner when the adversary process has been halted because of an

essentially unresponsive party[,] the diligent party must be protected lest [that party will] be

faced with interminable delay and continued uncertainty as to [that party's] rights."  Teamsters

Local 639–Emp'rs Health Trust v. Boiler & Furnace Cleaners, Inc., 571 F. Supp. 2d 101, 107

(D.D.C. 2008) (first alteration in original) (internal quotation marks omitted) (citations omitted).

### III.  LEGAL ANALYSIS

#### A.    Whether a Default Judgment is Warranted

The plaintiffs filed their Amended Complaint in this action on December 19, 2013.  See

Am. Compl., ECF No. 3.  Based on the representations of the plaintiffs' private process server,

the District was served with the Amended Complaint on December 23, 2013, in compliance with

Federal Rule of Civil Procedure 4(j)(2).  See Fed. R. Civ. P. 4(j)(2)(A) (outlining how to effect

service on a municipal corporation); see e.g., Return Service/Affidavit, ECF Nos. 4, 6 (declaring

that the summons was served on "Alex Curtis, who is designated by law to accept service of

process on behalf of [the] District of Columbia on [December 23, 2013]; . . . .");  Affidavit in

Support of Default, ECF No. 9.  The District has failed to answer the Complaint or the Amended

Complaint, otherwise file a defense against the plaintiffs' Amended Complaint, or respond to the

motion for a default judgment.  On March 5, 2014, upon the plaintiffs' request, the Clerk of this

Court entered a default against the defendant.  Clerk's Entry of Default, ECF No. 10.

Additionally, the District failed to respond to this Court's August 8, 2014 Order to "explain why

it has failed to respond or otherwise defend against the plaintiffs' [A]mended [C]omplaint and

show cause why the plaintiffs' motion for [a] default judgment should not be granted . . . ."

Order, ECF No. 13 at 2.  The Court cautioned the District in its Order to show cause that "in the

absence of a timely response, [the Court] will grant the plaintiffs' motion for a default judgment .

. . ." Id.  Where, as here, there is a complete "absence of any request to set aside the default or

suggestion by the [District] that it has a meritorious defense, it is clear that the standard for [a]

default judgment has been satisfied," a default judgment is appropriate.  Int'l Painters, 531 F.

Supp. 2d at 57 (citation omitted).  Therefore, a default judgment will be entered against the

District.

### B.      The Award of Attorneys' Fees

Under the IDEA, federal district courts have the authority to "award reasonable

attorneys' fees as part of the costs to a prevailing party who is the parent of a child with a

disability."[6] 20 U.S.C. § 1415(i)(3)(B)(i)(1).  "A court's determination of the appropriate

attorney[s'] fees . . . is based on a two-step inquiry."  Jackson v. District of Columbia, 696 F.

Supp. 2d 97, 101 (D.D.C. 2010).  Initially, a district court must determine if the plaintiff is the

prevailing party, and next, the court must "determine whether the attorney[s'] fees sought are

reasonable."  Id.

### 1.      The Plaintiffs Are the Prevailing Parties

Here, by virtue of the entry of a default judgment, the District is deemed to have

"admit[ted] every well-pleaded allegation in the complaint."  See Robinson v. Ergo Solutions,

LLC, 4 F. Supp. 3d 171, 178 (D.D.C. 2014).  The District has failed to challenge the plaintiffs'

allegation that "[e]ach [p]laintiff prevailed in IDEA litigation [and] receiv[ed] final relief ordered

---

[6] Although the statute specifically addresses the awarding of "attorneys' fees to a prevailing party who is the parent of a child with a disability," 20 U.S.C. § 1415(i)(3)(B)(i) (emphasis added), because some of the plaintiff are adult-students who brought this action on their own behalf, and the District has not contested that the plaintiffs were the prevailing parties as defined by the IDEA, the Court finds that the statute also confers to those adult student the right to also be awarded attorneys' fees.  See e.g., Jay v. District of Columbia, __ F. Supp. 3d __, ___, 2014 WL 6808295, at *2 n.3 (D.D.C. 2014) (Walton, J.) (citing Haywood v. District of Columbia, No. 12–cv–1722 BJR/DAR, 2013 WL 5211437 (D.D.C. Aug. 23, 2013)).

in a Hearing Officer's Determination," Am. Compl. ¶ 10, and thus has effectively conceded that

the plaintiffs are prevailing parties entitled to attorneys' fees.  See Order, ECF No. 13, at 2

(cautioning the District that "if it does not respond to this order by [September 1, 2014], the

Court will view this as an 'admi[ssion of] every well-pleaded allegation in the [plaintiffs'

amended] complaint'") (second and third alterations in original) (citation omitted).  Therefore,

this Court's analysis is confined to the reasonableness of the plaintiffs' fee requests.

### 2.   The Reasonableness of the Plaintiffs' Requested Fees

Although the Count concludes by virtue of the default judgment that the plaintiffs are the

prevailing parties, the Court must still conduct an independent determination as to "whether the

attorney[s'] fees sought are reasonable." Jackson, 696 F. Supp. 2d at 101.  "Reasonable"

attorneys' fees are calculated by multiplying the reasonable number of hours expended by the

hourly rate found to be reasonable.  See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

Importantly, the plaintiffs bear the burden of demonstrating that both the hourly rate and the

number of hours expended on particular tasks are reasonable.  In re North, 59 F.3d 184, 189

(D.C. Cir. 1995).  To establish the reasonableness of the hours expended, the plaintiffs "may

submit an invoice that is sufficiently detailed to permit [a] District Court to make an independent

determination of whether or not the hours claimed are justified." Young v. District of Columbia,

893 F. Supp. 2d 125, 130 (D.D.C. 2012) (citations and internal quotations omitted).  To show the

reasonableness of their hourly rates, the plaintiffs "must submit evidence on at least three fronts:

the attorney's billing practices, the attorney's skill, experience, and reputation; and the prevailing

market rates in the relevant community." Jackson, 696 F. Supp. 2d at 101 (citing Covington v.

District of Columbia, 57 F.3d 1101, 1107 (D.C. Cir. 1995) (internal quotation marks omitted).

"Once [the] plaintiffs have provided such [evidence], there is a presumption that the number of

hours billed and the hourly rates are reasonable." <u>Jackson</u>, 696 F. Supp. 2d at 101 (citation

omitted).  Consequently, "the burden then shifts to the defendants to rebut [the] plaintiffs'

showing that the amount of time spent was reasonable and that the hourly rates for the attorneys

who worked on the matter were reasonable, considering their various skill levels and experience

for this kind of case."  <u>Id.</u> (citation omitted).

### a. The Number of Hours Billed by the Plaintiffs' Counsel

The plaintiffs argue that the hours documented are reasonable because, "[a]s specialists in

this field, the firm attorneys were able to work efficiently" and adjustments "to eliminate

excessive, redundant, or otherwise unnecessary hours" have already been made.  Pls.' Mem. at 5.

To satisfy their burden of proof as to the reasonableness of the hours expended, the plaintiffs

submit a detailed itemization of tasks performed, the hours expended, and the rates that were

charged.  <u>See generally</u> Pls.' Mot., Exhibit ("Ex.") 1 (Itemized Invoice for Plaintiffs ("Invoice")).

Additionally, the plaintiffs have included a verified statement from one of the plaintiffs'

attorneys detailing his billing decisions and the steps taken to limit the amount of fees being

requested.  <u>See generally</u> Pls.' Mot., Ex. 2 (Verified Statement of Kiran Hassan ("Hassan

Decl.")).  However, while the invoice provided by the plaintiffs constitutes forty-two pages of

individual line items as well as a total price accounting for each case,[7] the invoice does not

aggregate the total number of hours performed by each attorney in each specific case.  <u>See</u> Pls.'

Mot., Ex. 1 (Invoice).  It is, therefore, impossible for the Court to determine whether the <u>total</u>

<u>number</u> of hours billed in each case were reasonable without expending what would be

unnecessary time and resources tabulating forty-two pages of individual line items.  Thus, the

---

[7]The itemized total for each plaintiff is as follows:  Catalina Salmeron, $67,924.83; Janine Coleman, $94,296.10; Kathryn Flythe, $67,863.25; Koshi Wade, $95,570.97; Ladine Everett, $49,336.02; Tai Coates, $58,143.19; and Icia Liriano, $72,757.50.

invoice submitted is not "sufficiently detailed to permit [this] Court to make an independent

determination of whether or not the hours claimed are justified." Young, 893 F. Supp. 2d at 130.

Accordingly, the plaintiffs must resubmit a revised invoice that permits the Court to assess the

total number of hours each attorney performed in each case.

### b. The Plaintiffs' Requested Hourly Billing Rates

As already noted, the plaintiffs seek fees for the services provided by two lawyers, to be

paid at the following rates:  $ 640.00 per hour for Kiran Hassan, an attorney with approximately

eleven years of litigation experience during the relevant time period; and $ 567.00 per hour for

Juan Fernandez, an attorney with approximately thirteen years of litigation experience during the

relevant time period.  See Pls.' Mot., Ex. 2 (Hassan Decl.) ¶¶ 11–12.  As previously noted, the

plaintiffs have submitted a verified statement from their counsel that outlines the firm's billing

practices, the attorneys' skill and experience, and the nature of the firm's practice.  See generally

id.  Notably, absent from the plaintiffs' filings is any information concerning the rates their

attorneys customarily charge and receive from their other clients.  See Nat'l Ass'n of Concerned

Veterans v. Sec'y of Def., 675 F.2d 1319, 1325 (D.C. Cir. 1982) ("The best evidence [of market

rates] would be the hourly rate customarily charged by the [attorney] or by his law firm."); Pls.'

Mem. at 5.  Nonetheless, the plaintiffs contend that the evidence provided satisfies their burden

of establishing the reasonableness of the hourly rates, such that the defendant now "bears the

burden of proving the fees and costs unreasonable." Pls.' Mem. at 4.  The Court, however, is not

persuaded that the rates requested by the plaintiffs "are in line with those prevailing in the

community for similar services[,]" Covington, 57 F.3d at 1108, and thus declines to award the

requested rates.

The rates plaintiffs' counsel is requesting are considerably in excess of those rates

established by <u>Laffey v. Northwest Airlines, Inc.</u>, 572 F. Supp. 354 (D.D.C. 1983), <u>rev'd on
other grounds</u>, 746 F.2d 4 (D.C. Cir. 1984), and now updated by the United States Attorney's
Office for the District of Columbia ("U.S. Attorney's Office <u>Laffey</u> Matrix").[8]  Almost all
members of this Court have consistently declined to approve as reasonable the inflated rates that
comprise the Adjusted <u>Laffey</u> Matrix used by the plaintiffs, <u>see</u> Pls.' Mot., Ex. 3 ("Adjusted
<u>Laffey</u> Matrix"), electing instead to use the U.S. Attorney's Office's <u>Laffey</u> Matrix as the
presumptively <u>highest</u> hourly rate in IDEA cases.  <u>See, e.g.</u>, <u>McAllister v. District of Columbia</u>,
__ F. Supp. 2d __, __, 2014 WL 901512 at *7–8 (D.D.C. 2014); <u>Rooths v. District of Columbia</u>,
802 F. Supp. 2d 56, 61–63 (D.D.C. 2011), <u>Irving v. Dist. of Columbia Pub. Sch.</u>, 815 F. Supp. 2d
119, 128–130 (D.D.C. 2011); <u>Blackman v. District of Columbia</u>, 677 F. Supp. 2d 169, 176
(D.D.C. 2010).  In an effort to demonstrate the reasonableness of their requested fees, the
plaintiffs rely on one exception, <u>Eley v. District of Columbia</u>, 999 F. Supp. 2d 137 (D.D.C 2013),
as support for their contention that the Adjusted <u>Laffey</u> Matrix rates are an appropriate
representation of the prevailing market rates for IDEA litigation, Pls.' Mem. at 5–6.  The <u>Eley</u>
Court largely based its award on the plaintiff's attorney's representation that he "always
matche[s] [his] hourly rates to those in what is commonly known as 'the adjusted <u>Laffey</u>

---

[8] The Court acknowledges that there are two versions of the <u>Laffey</u> Matrix used in the District of Columbia:  (1) the
"U.S. Attorney's Office <u>Laffey</u> Matrix" and (2) the "Adjusted <u>Laffey</u> Matrix."  <u>See</u> <u>Smith v. District of Columbia</u>,
466 F. Supp. 2d 151, 156 (D.D.C. 2006).  The United States' Attorney's Office <u>Laffey</u> Matrix "calculates the matrix
rate for each year by adding the change in the overall cost of living, as reflected in the Consumer Price Index[] for
the Washington, D.C. area for the prior year."  <u>Id.</u>  In contrast, the Adjusted <u>Laffey</u> Matrix rate used by the
plaintiffs, "calculates the matrix rate for each year by using the legal services component of the [Consumer Price
Index] rather than the general [Consumer Price Index] on which the U.S. Attorney's Office Matrix is based."  <u>Id.</u>
Notably, the rates depicted in the Adjusted <u>Laffey</u> Matrix are considerably higher than those established by the U.S.
Attorney's Office <u>Laffey</u> Matrix.  This is primarily because the Adjusted <u>Laffey</u> Matrix uses <u>national</u> statistics
whereas the United States' Attorney's Office <u>Laffey</u> Matrix uses District of Columbia area statistics.  <u>See</u> <u>DL v.
District of Columbia</u>, 256 F.R.D. 239, 242–43 (D.D.C. 2009) ("[T]he [U.S. Attorney's Office] matrix is more in line
with precedent because it is based on the local community . . . .").

[M]atrix,'"[9] and her expert's representations on the subject.  Id. at 156 (second alteration in

original) ("[T]he plaintiff's counsel's declaration, as well as the plaintiff's expert's declaration

explaining the methodology and rationale for the updated rates, demonstrates that the [Adjusted

Laffey Matrix] rates are an appropriate measure of the prevailing community rates for attorneys

in the Washington, D.C. area.").  Moreover, the Eley Court gave considerable weight to the

attorney's representation that "[h]is firm has 'had clients who pay the firm [the Adjusted Laffey

Martix] rates directly, regardless of whether reimbursement is ever obtained,'" which, in

conjunction with the other information, resulted in the Court concluding that in that case, the

adjusted rates rather than the U.S. Attorney's rates were "more accurate" as they reflected "the

rate actually charged by the attorney who performed the successful work being compensated."

Id.

        Here, given the plaintiffs' failure to provide any information as to their attorneys' normal

billing practices coupled with a near-unanimous rejection of the Adjusted Laffey Matrix rates by

other members of this Court for the type of services performed, this Court too finds that the

plaintiffs have failed to satisfy their burden of demonstrating that the rates proposed by their

attorneys reasonably approximate the rates that are charged in the District of Columbia

metropolitan area by lawyers litigating IDEA cases solely at the administrative level.  See e.g.

McAllister, __ F. Supp. 2d at ___, 2014 WL 901512, at *8 (finding the Adjusted Laffey Matrix

rates inappropriate).  The Court therefore does not consider the Adjusted Laffey Matrix rates as

reflective of the prevailing market rates and instead, in its discretion, uses the U.S. Attorney's

---

[9] The Court also notes that Eley, the only IDEA case the Court has identified in this District in which the Adjusted Laffey Matrix has been used by a member of this Court, involved substantive and extensive disputes litigated at the administrative, district court, and circuit court levels.  See Eley, 999 F. Supp. 2d at 143–44 (outlining the history of the case).  Additionally, the Eley Court specifically noted that generally an award of some percentage less than the full United States' Attorney's Office Laffey Matrix rate is appropriate "[w]here[, as here,] the merits of an IDEA case have been resolved administratively and the litigation in federal court is limited to a dispute over attorneys' fees, . . . ."  Id. at 159 n.12 (citing Agapito v. District of Columbia, 525 F. Supp. 2d 150, 155 (D.D.C. 2007)).

Office <u>Laffey</u> Matrix as the highest hourly rate that the plaintiffs' attorneys are entitled to receive in this case.

The Court notes additionally that although the legal work in this case was performed from April 2012 through November 2013, the plaintiffs' attorneys have increased the rates they seek to recover as commensurate with current market rates as opposed to the market rates applicable at the time their services were rendered.  <u>See</u> Pls.' Mem. at 6; Pls.' Mot., Ex. 1 (Invoice).  The plaintiffs argue that this is appropriate in this case because "[w]hen awarding fees under a federal fee-shifting statute, courts should make 'an appropriate adjustment for delay in payment[—]whether by the application of current rather than historic hourly rates or otherwise." Pls.' Mem. at 6 (quoting and citing <u>Missouri v. Jenkins</u>, 491 U.S. 274, 284 (1989)).  However, the plaintiffs neither provide an explanation as to why current rates are appropriate <u>in this case</u>,[10] nor do they provide any examples of courts awarding current rates for services provided in the past in other IDEA cases, and thus, they have failed to satisfy their burden of proving the reasonableness of their application of current market rates.  <u>See</u> <u>McAllister</u>, __ F. Supp. 2d at __, 2014 WL 2921020 (finding an award of current rates inappropriate).

The Court notes also that the undersigned generally rejects an award of the full U.S. Attorney's Office <u>Laffey</u> Matrix rate in non-complex IDEA cases litigated solely at the administrative level, finding that "[t]he [U.S. Attorney's Office] Matrix is not <u>ipso facto</u> determinative of the proper hourly rate . . . ."  <u>Garvin v. District of Columbia</u>, 851 F. Supp. 2d 101, 106 (D.D.C. 2012) (Walton, J.).  Instead, it is the general position of the undersigned to use

---

[10] Neither the Complaint nor the Amended Complaint alleges that the plaintiffs' attorneys petitioned the District for fees prior to the filing those pleadings in this case.  In fact, there is no indication that the plaintiffs <u>ever</u> filed a fee request with the District, and thus the plaintiffs have failed to provide the Court with any evidence from which it could conclude that there has been a delay in payment justifying payment at current rates.

the U.S. Attorney's Office <u>Laffey</u> Matrix rate as the appropriate measure of the prevailing

market rate in IDEA cases and then evaluate on a case-specific basis what amount of attorneys'

fees should be awarded.  <u>See</u> <u>Jay v. District of Columbia</u>, ___ F. Supp. 3d ___, ___, 2014 WL

6808295, at *3–6 (D.D.C. 2014) (Walton, J.) (finding an award of eighty percent of the U.S.

Attorney's Office <u>Laffey</u> Matrix rate appropriate where the case was not complex and litigated

solely at the administrative level).  Although the plaintiffs here do not address the complexity of

their respective cases such that an award of the full U.S. Attorney's Office <u>Laffey</u> Matrix rates

would be appropriate, given that the District has failed to file a response to their fee requests, it

has failed to "provide specific contrary evidence tending to show that a lower rate would be

appropriate."  <u>Covington v. District of Columbia</u>, 57 F.3d at 1109–10.  Therefore, the Court

concludes that it is appropriate to award the plaintiffs' attorneys an hourly rate commensurate

with the full U.S. Attorney's Office <u>Laffey</u> Matrix rate appropriate for the <u>year</u> when the legal

services were rendered.

Accordingly, the plaintiffs shall submit to the Court for its review an updated final

invoice with the appropriate fee applicable for each service for which compensation is sought.

Because both attorneys had between eleven and nineteen years of experience at the time their

legal services were rendered, each attorney's hourly fee shall be the following: $420.00 per hour

for all work performed from June 1, 2011 through May 31, 2012; $435.00 per hour for all work

performed from June 1, 2012 through May 31, 2013; and $435.00 per hour for all work

performed from June 1, 2013 through May 31, 2014.  Additionally, the plaintiffs' attorneys shall

submit to the Court a separate bill for each case delineating how many hours were individually

billed by Mr. Hassan and by Mr. Fernandez, along with an aggregation of the total number of

hours performed by each attorney in each case.

### C.      The Plaintiffs' Fees on Fees Request

"Parties who prevail at the administrative level can also recover fees-on-fees, as [the] general rule [in this Circuit] is that the court may award additional fees for time reasonably devoted to obtaining attorney[s'] fees." Kaseman v District of Columbia, 444 F.3d 637, 640 (D.C. Cir. 2006) (internal quotations omitted).  The Court has already determined that by failing to respond to the plaintiffs' Amended Complaint, the District has conceded that the plaintiffs are prevailing parties, and thus, pursuant to the IDEA they are entitled to the additional fees incurred pursuing this action to recover their attorneys' fees.  See Garvin v. Government of the Dist. of Columbia, 910 F. Supp. 2d 135, 138–39 (D.D.C. 2012) (Walton, J.) ("Nothing in the statutory language of the IDEA fee-shifting provision prohibits 'fees on fees' requests"); but see id. at 140–41 (finding fees on fees litigation straightforward and not sufficiently complex to warrant the U.S. Attorney's Office Laffey Matrix rates and instead awarded an hourly rate of one half the maximum applicable Laffey rate).  However, their requests should be limited to the rate of compensation this Court found awardable in Garvin.  Id.

### D.      The Plaintiffs' Request for a Penalty for Delay in Paying the Attorneys' Fees

The plaintiffs argue that "[b]ecause of the District's long history of ignoring the timelines of orders for payment of IDEA attorneys' fees," this Court should "order that the District pay an additional $4,000.00 for each delay of a month or part thereof."  Pls.' Mem. at 7.  In considering the appropriate remedies available to the plaintiffs, the Court is constrained by the Federal Rules of Civil Procedure.  Where a defendant entirely fails to defend against an action, Rule 54(c) specifically limits damages to the amount pleaded in the complaint.  Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.").  And here, a demand of a penalty for late payment of attorneys' fees is not

requested in either the Complaint or the Amended Complaint.  The plaintiffs' request for "all other relief the Court deems just, Am. Compl. at 3, is inadequate to satisfy Rule 54(c), see Silge v. Merz, 510 F.3d 157, 159, 160 (2nd Cir. 2007) (holding that the district court did not err by entering a default judgment "only for the amount sought in the complaint" and refusing to include an award for prejudgment interest, where the plaintiff's complaint did not specifically request prejudgment interest); see also id. at 160 (finding that the plaintiff "could easily have drafted a complaint that included a distinct claim . . . in the demand clause . . . . [but] his failure to do so, intentional or not, ran the risk that his damages would be limited in the event of default").  And even if such a request had been made in either pleading, it is not alleged that the plaintiffs' petitioned the District for attorneys' fees prior to the filing of this case.  In fact, there is no indication that the plaintiffs ever submitted a fee request to the District, and thus, the plaintiffs have failed to provide the Court with any evidence from which it could conclude that there has been a delay in the payment of their attorneys' fees.  Furthermore, the plaintiffs present no legal authority to support the granting of such relief.  Therefore, the request is denied.

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant the plaintiffs' motion for entry of default judgment, grant in part and deny in part the plaintiffs' requested relief, and hold in abeyance the awarding of any fees until the plaintiffs provide the Court with the requisite information.

**SO ORDERED** this 9th day of January, 2015.[11]

REGGIE B. WALTON
United States District Judge

---

[11]  An Order consistent with this Memorandum Opinion shall be contemporaneously.