# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ———————————————— | ) | |
| CATALINA SALMERON, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 13-1615 (RBW) |
| | ) | |
| DISTRICT OF COLUMBIA, | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————— | ) | |

## MEMORANDUM OPINION

The plaintiffs[1] bring this action against the District of Columbia ("the defendant" or "the District") under the Individuals with Disabilities Education Act ("IDEA").[2]  Currently pending before the Court are the Plaintiffs' Motion for Summary Judgment ("Pls.' Mot."), and the defendant's Opposition to Plaintiff's Motion for Summary Judgment and Cross-Motion for Summary Judgment ("Def.'s Mem.").  Upon careful consideration of the parties' submissions and the entire record in this case, the Court concludes that it must grant in part and deny in part the plaintiffs' motion for summary judgment and grant in part and deny in part the defendant's cross-motion for summary judgment.[3]

---

[1] The plaintiffs are Catalina Salmeron, Janine Coleman, Kathryn Flythe, Koshi Wade, Ladine Everett, Tai Coates, and Icia Liriano.

[2] "Th[is] legislation was enacted as the Education of the Handicapped Act, title VI of Pub. L. 91–230, 84 Stat. 175, and was renamed the Individuals with Disabilities Education Act in 1990, see § 901(a)(3), Pub. L. 101–476, 104 Stat. 1142." Forest Grove Sch. Dist. v. T.A., 557 U.S. 230, 239 n.6 (2009).  The IDEA has been codified in sections scattered throughout Title 20 of the United States Code.  See Bd. of Trs. of Univ. of Ala. v. Garrett, 531 U.S. 356, 391 app. B (2001) (Breyer, J., dissenting).

[3] In addition to the documents previously referenced, the Court considered the following submissions in reaching its decision: (1) the plaintiff's Amended Complaint for Attorney's Fees and Costs ("Am. Compl."); (2) the Plaintiffs' Statement of Material Facts Not in Dispute ("Pls.' Facts"); (3) the plaintiff's Memorandum in Support of Plaintiffs' Motion for Summary Judgment ("Pls.' Mem."); (4) the plaintiffs' Memorandum in Opposition to Cross-Motion for Summary Judgment and Reply to Opposition to Motion for Summary Judgment ("Pls.' Reply Br."); (5) the

(continued . . . )

# I.   BACKGROUND

The plaintiffs initiated this action to recover "legal fees and costs incurred in successful litigation under the [IDEA]," Am. Compl. ¶ 1.  The plaintiffs each allege that they "prevailed in IDEA [administrative] litigation, receiving final relief ordered in [several] "[h]earing [o]fficer's Determination[s])." Id. ¶ 10.  At the seven underlying IDEA administrative proceedings ("proceedings" or "due process hearings"), the plaintiffs were represented by Kiran Hassan, who states that she is "the sole owner of Hassan Law Firm, LLC, the law firm that served as counsel for the [p]laintiffs in the administrative proceedings in this matter."  Pls.' Mot., Exhibit ("Ex.") 3 (Verified Statement of Kiran Hassan ("Hassan Statement")) ¶ 2.  Juan Fernandez, who, according to Hassan, "received his [J]uris [D]octorate [degree] from Catholic University in 1999 . . . [and] has been specializing in IDEA litigation . . . since 2001," id. ¶ 12, also participated in the due process hearings subject to this litigation, see, e.g., Pls.' Mot., Ex.1 (Determinations) at 54 (describing Fernandez as an "[e]ducational [a]dvocate").

On October 16, 2015, the plaintiffs filed their motion for summary judgment.  In their motion, the plaintiffs ask the Court to award them "attorneys' fees . . . incurred in the underlying administrative litigation in the amount of $528,256.00."  Pls.' Mot. at 1.  The plaintiffs assert that their evidence, including a "detailed itemization of tasks performed [and the] hours expended [on them]," Pls.' Mem. at 4, demonstrates that "the [number of] hours claimed are reasonable," id. at 5.  Further, the plaintiffs assert that the Court must determine their hourly fees in accordance with "an updated version of the Laffey [M]atrix."  Id. at 11.  According to the plaintiffs, the updated Laffey Matrix is the appropriate benchmark of a reasonable hourly rate because,

---

( . . . continued)
Defendant's Response to Plaintiffs' Statement of Material Facts ("Def.'s Response to Pls.' Facts"); (6) the Defendants' Statement of Material Facts ("Def.'s Facts"); and (7) the defendant's Reply in Further Support of its Cross-Motion for Summary Judgement ("Def.'s Reply Br.").

supposedly, they "presented the declarations of lawyers attesting to their ability to negotiate and earn these rates on the open market." Id. at 12. Additionally, the plaintiffs assert that the Court "should award current hourly rates," id. at 13, and explain that, "[b]y 'current,' [they] . . . refer to 2013 rates," id. n.5, i.e., the rates in effect when they commenced this action.

The plaintiffs also ask the Court to "order a fee petition from the [p]laintiffs at the conclusion of this litigation," id. at 13, asserting that plaintiffs who successfully litigate a case for attorney's fees and costs under the IDEA may also recover "additional fees for time reasonably devoted to obtaining attorney's fees," id. (citing Kaseman v. District of Columbia, 444 F.3d 637, 640 (2006)). Finally, the plaintiffs request the Court to "order that the District pay an additional $4,000.00 for each delay of a month or part thereof in payment [of attorney's fees]," id. at 14 (citation omitted), alleging that the District has a "long history of ignoring the timelines of orders for payment of IDEA attorneys' fees," id. (citations omitted).

On November 13, 2015, the defendant filed its cross-motion for summary judgment. The defendant argues that the plaintiffs have failed to "offer . . . relevant evidence supporting the prevailing rate in the community for the type of work done by their attorneys in this case," Def.'s Mem. at 2, and that the plaintiffs' "requested enhanced Laffey rates are not warranted," id. at 3 (citation omitted). Instead, the defendant asserts that "[t]hree-fourths of the [lower] [United States Attorneys' Office] Laffey rate is the maximum appropriate rate for this case." Id. at 6. As support for this position, the defendant states that "[s]everal judges in this Court have held the Laffey [M]atrix to be inapplicable and have instead compensated attorney['s] fees at a rate equal to three-quarters . . . of Laffey or less." Id. at 8 & n.3 (citing cases). "Given the number of cases in which a rate less than Laffey has been awarded to [p]laintiffs' counsel in IDEA actions," the defendant opines, "it is clear that the [C]ourt need not award Laffey rates as a matter of course in

order to convince competent counsel to take IDEA cases." <u>Id.</u> at 9.  The defendant disputes the plaintiffs' claim that the updated <u>Laffey</u> Matrix is the appropriate benchmark of a reasonable hourly rate, asserting that the plaintiffs "have given no indication of a market rate, other than their own self-serving affidavits." <u>Id.</u> at 10.

The defendant raises a more specific challenge to the reasonableness of Hassan's requested hourly rate, contending that it "is not reasonable because" she "billed . . . at a rate higher than her experience level." <u>Id.</u> at 13.  To bolster this contention, the defendant states that, although "Hassan graduated from law school in 2001, and has been specializing in special education matters since 2012," <u>id.</u>, "she did not start practicing law until May 2004," <u>id.</u> (citation omitted).

The defendant also advances several additional arguments.  First, the defendant notes that "Courts in this District often reduce awards of attorney['s] fees under the IDEA based on partial success," <u>id.</u> at 15 (citing cases), and asserts that the plaintiffs' fees "should be reduced by at least 50%," <u>id.</u> at 19, because the plaintiffs "did not receive all of the requested relief" at the due process hearings, <u>see id.</u> at 16; <u>see also id.</u> at 15–19.  Second, the defendant states that the plaintiffs "should not [be able to] bill the District for services rendered by an educational advocate or consultant," <u>id.</u> at 19 (citing <u>Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy</u>, 548 U.S. 291, 300 (2006)), and asserts that "Juan Fernandez . . . served as [an] educational advocate[] in each of the hearings comprising this action," <u>id.</u> at 20, concluding that "[a]ll fees by [him] should be deducted from [the] [p]laintiffs' invoice," <u>id.</u>  Third, the defendant disputes that the plaintiffs "are entitled to payment at the firm's current rates," <u>id.</u>, contending that "case law dictates that [a]n appropriate award of attorney's fees against the government must be based on billing rates at the time that work was performed," <u>id.</u> (citations omitted).  Finally, the defendant

4

characterizes the plaintiffs' assertion that it has a "long history of delaying payments" as "baseless and without merit," id. at 21, asserting that the plaintiffs have offered "scant evidence demonstrating that the District either has previously been or is now likely to be recalcitrant in paying the fees ordered by the Court," id. (citation omitted).

## II.   STANDARD OF REVIEW

Before granting a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, a court must find that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Steele v. Schafer, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (citation omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are . . . not . . . [decisions for] a judge . . . [to make when] ruling on a motion for summary judgment . . . ." Id. The movant has the burden of demonstrating the absence of a genuine issue of material fact and that the non-moving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party . . . bear[s] the burden of proof." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In responding to a summary judgment motion, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citations omitted).  Accordingly, the

nonmoving party must not rely on "mere allegations or denials . . . but . . . must set forth specific

facts showing that there [are] genuine [disputes of material fact]."  See Anderson, 477 U.S. at

248 (second alteration in original) (citation omitted).  "The mere existence of a scintilla of

evidence in support of the [nonmoving party's] position [is therefore] insufficient" to withstand a

motion for summary judgment." Id. at 252.

## III.    ANALYSIS

The plaintiffs seek reimbursement for legal work performed by Hassan and Fernandez for

themselves personally and for their children.  See generally Pls.' Reply Br., Ex. 3 (Invoice).  In

the interest of clarity, the Court will first consider the reasonableness of Hassan's request for

attorney's fees.

## A.    Attorney Hassan

### 1.    Basic Test

"The IDEA requires the District to provide disabled children with a 'free appropriate

public education.'"  Eley v. District of Columbia, 793 F.3d 97, 99 (D.C. Cir. 2015) (quoting 20

U.S.C. § 1400(d)(1)(A)).  "If the District fails to do so, the child's parents can file an

administrative complaint with the District Office of the State Superintendent of Education . . . ."

Id. (citing § 1415(b)(6)).  And "[u]nder the [IDEA], a court may award attorneys' fees to the

'prevailing party,' whether it be the plaintiff or the defendant."  District of Columbia v.

Ijeanbuonwu, 642 F.3d 1191, 1192 (D.C. Cir. 2011).  "An IDEA fee award 'shall be based on

rates prevailing in the community in which the action or proceeding arose for the kind and

quality of services furnished.'"  Id. (quoting § 1415(i)(3)(C)).  "Thus, if the court finds that 'the

amount of the attorneys' fees otherwise authorized to be awarded unreasonably exceeds the

hourly rate prevailing in the community for <u>similar services</u> by attorneys of reasonably comparable skill, reputation, and experience,' it 'shall reduce . . . the amount of the attorneys' fees awarded.'" <u>Id.</u> (alteration in original) (quoting § 1415(i)(3)(F)(ii)).

The District of Columbia Circuit ("the Circuit") employs a three-part test to determine the amount of an appropriate fee award. "First, the court must determine the 'number of hours reasonably expended in litigation.'" <u>Eley</u>, 793 F.3d at 100 (quoting <u>Save Our Cumberland Mountains, Inc. v. Hodel</u>, 857 F.2d 1516, 1517 (D.C. Cir. 1988)). "Second, it must set the 'reasonable hourly rate.'" <u>Id.</u> (quoting <u>Cumberland Mountains</u>, 857 F.2d at 1517). "Finally, it must determine whether use of a multiplier is warranted." <u>Id.</u> "The 'fee applicant bears the burden of establishing entitlement to an award, documenting the appropriate hours, and justifying the reasonableness of the rates' and the opposing party remains 'free to rebut a fee claim.'" <u>Id.</u> (quoting <u>Covington v. District of Columbia</u>, 57 F.3d 1101, 1107–08 (D.C. Cir. 1995)).

Because "the IDEA prohibits [the] application of any 'bonus or multiplier,'" <u>id.</u> (quoting § 1415(i)(3)(C)), the Court proceeds to analyze the reasonableness of the plaintiffs' requested (1) hourly rates and (2) number of hours expended in the administrative litigation.

**2.      The Reasonableness of the Plaintiffs' Requested Hourly Rates**

**a.      Whether to Apply the LSI or USAO <u>Laffey</u> Matrix**

To demonstrate that the requested hourly rates are reasonable, "a fee applicant must 'produce satisfactory evidence—<u>in addition to</u> the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" <u>Id.</u> (quoting <u>Blum v. Stenson</u>, 465 U.S. 886, 895 n.11 (1984)). This Circuit allows fee applicants to "submit attorneys' fee matrices

as one type of evidence that [provides] a useful starting point in calculating the prevailing market rate." Id. (citation omitted). "The most commonly used fee matrix [in this Circuit] is the Laffey Matrix . . . ," id. (citing Laffey v. N.W. Airlines, Inc., 572 F. Supp. 354, 371 (D.D.C. 1983)), which "established . . . [a fee] schedule for lawyers who practice 'complex federal litigation,'" id.

"Competing updated Laffey Matrices have [been] developed . . . ." Id. at 101. "The first Laffey Matrix is maintained and updated by the District United States Attorney's Office (USAO Laffey Matrix)." Id. "The USAO Laffey Matrix starts with '[t]he hourly rates approved in Laffey . . . for work done principally in 1981–82' as its baseline." Id. (alterations in original) (citation omitted). Then, "[i]t adjusts these rates to account for inflation by using the Consumer Price Index for All Urban Consumers (CPI–U) of the United States Bureau of Labor Statistics." Id. (citation omitted). By contrast, "a competing Laffey Matrix (LSI Laffey Matrix) . . . uses the Legal Services Index of the Bureau of Labor Statistics to adjust for inflation." Id. "[T]he LSI Laffey Matrix adjusts for the increases in costs for legal services only." Id. at 101–02. The LSI Laffey Matrix was "[d]eveloped by Michael Kavanaugh, an economist from Hawaii." Id. at 101.

The Circuit has yet to definitively decide whether "IDEA litigation is . . . sufficiently 'complex' to use either version of the Laffey Matrix (and if so, which version of the Laffey Matrix is more appropriate)." Id. at 105. However, in Eley, the Circuit vacated a district court's decision to use the LSI Laffey Matrix in determining a fee award under the IDEA. Id. In reaching this decision, the Circuit stated that the plaintiff "had the burden to produce satisfactory evidence—in addition to [her] attorney's own affidavits—that [her] requested rates [were] in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Id. at 104 (some alterations in original) (citation omitted).

And, the Circuit reasoned that the following "evidentiary submission" failed to meet this standard: "the LSI Laffey Matrix, Kavanaugh's declaration explaining the LSI Laffey Matrix[,] and [the plaintiff's] lawyer's verified statement averring that [the lawyer] charged his paying clients the rates in the LSI Laffey Matrix."  Id.  In the Circuit's judgment, these submissions included no "evidence that [the plaintiff's] requested rates [were] in line with those prevailing in the community for similar services[.]"  Id. (citations omitted).  The Circuit further noted that the plaintiff "directed the district court to only four cases that had employed the LSI Laffey matrix— none of which was an IDEA case."  Id.  Therefore, the Circuit concluded that the district court "abused its discretion" by "relieving [the plaintiff] of her burden."  Id. at 105.  Consequently, the Circuit vacated and remanded the case for further proceedings consistent with its opinion.  Id.[4]

In this District, "there has not been a unified approach to the proper rates for attorneys' fees in IDEA cases[.]"  Young v. District of Columbia, 893 F. Supp. 2d 125, 130 (D.D.C. 2012). Some judges "discount[] the [USAO] Laffey Matrix rates by 25%," id. (citing Rooths v. District of Columbia, 802 F. Supp. 2d 56, 63 (2011)), based on the notion that IDEA cases usually are not "of sufficient complexity to justify a different rate," McNeil v. District of Columbia, Civil Action No.: 14-1981 (RC), 2015 WL 9484460, at *6 (D.D.C. Dec. 29, 2015).  "Other courts in this District, however, ha[ve] rejected the suggestion that IDEA administrative litigation is categorically less complex than other forms of litigation, and reaffirm[ed] that IDEA cases are sufficiently complex to allow application of the Laffey Matrix."  Young, 893 F. Supp. 2d at 131 (citing cases).

---

[4] The Court's research did not reveal any Circuit decisions outside of those of this Circuit discussing the propriety of using either Laffey Matrix in IDEA cases.  Furthermore, while another District of Columbia Circuit case discusses the Laffey Matrix in the IDEA context, see generally Price v. District of Columbia, 792 F.3d 112 (D.C. Cir. 2015), Price does not inform the question before the Court here, namely, whether the USAO Laffey Matrix is an appropriate benchmark for determining an attorney's fee award under the IDEA.

This Court has endorsed a hybrid version of these two approaches.  "[T]he undersigned generally rejects an award of the full [USAO] Laffey Matrix rate in non-complex IDEA cases litigated solely at the administrative level, finding that [t]he [USAO Laffey] Matrix is not ipso facto determinative of the proper hourly rate . . . ."  Salmeron v. District of Columbia, 77 F. Supp. 3d 201, 210–11 (D.D.C. 2015) (Walton, J.) (some alterations in original) (citation omitted), vacated on other grounds, 113 F. Supp. 3d 263 (D.D.C. 2015) (Walton, J.).  "Instead, it is the general position of the undersigned to use the [USAO] Laffey Matrix rate as the appropriate measure of the prevailing market rate in IDEA cases and then evaluate on a case-specific basis what amount of attorneys' fees should be awarded."  Id. at 211 (citation omitted).

In a recent decision, this Court awarded the plaintiff's attorney 92% of the USAO Laffey rate.  Hammond v. District of Columbia, ___ F.3d ___, 2016 WL 1704116, at *8 (D.D.C. Apr. 28, 2016) (Walton, J.).  In Hammond, the Court relied on several factors in reaching this position, including: (1) the attorney's verified statement that she matched her hourly rates to those in the USAO Laffey Matrix and had several paying clients who had paid those rates, id. at *7; (2) the decisions of other judges in this District awarding attorneys "100% of the Laffey Matrix," id. (citation omitted); (3) the affidavits of two other attorneys stating that they "practice[d] special education law, litigate[d] IDEA cases against the District of Columbia, and charge[d] the USAO Laffey rate when they represent[ed] both paying and non-paying clients," id.; and (4) the complexity of the case, which included participating in a 10-hour, two-day administrative hearing, the submission of "fifty-six exhibits," the presentation of "six witnesses" during the hearing, and the issuance of a "[nineteen]-page determination" by the hearing officer resolving "as many as eleven discrete issues," id.

In another case, this Court awarded the plaintiff approximately 90% of the USAO Laffey rate "after a lengthy and contested hearing."  Garvin v. District of Columbia, 851 F. Supp. 2d 101, 106 (D.D.C. 2012) (Walton, J.).  In Garvin, the Court cited the following facts to justify this award:

> Plaintiff A.G.'s administrative hearing involved [eleven] exhibits totaling over [seventy] pages.  The exhibits included reports from two psychological evaluations, report cards, behavior intervention plans, etc.  D.C. Public Schools offered [two] exhibits totaling approximately [seventeen] pages.  D.C. Public Schools filed a detailed Answer.  A prehearing conference was held and the hearing officer issued a [four] page pre-hearing order.  Plaintiffs listed [fifteen] witnesses and D.C. Public Schools disclosed [fourteen] witnesses to testify at the hearing.  These witnesses included a speech/language pathologist, psychologist, teachers, therapists, [three] DCPS supervisors, IEP coordinator and the DCPS director of special education.  Whether they ultimately testified at the hearing or not, undersigned counsel needed to be prepared to respond to each and every witness listed by D.C. Public Schools.  The hearing lasted virtually a full day.  Each party filed lengthy written closing arguments.  The hearing officer subsequently issued a [twelve] page single spaced decision awarding [the] petitioner the relief being sought.

Id. at 106–07.

By contrast, this Court held in another case that only 75% of the USAO Laffey rate was proper.  See Jay v. District of Columbia, 75 F. Supp. 3d 214, 221–22 (D.D.C. 2014) (Walton, J.). There, the Court reasoned that the case was "relatively straightforward."  Id. at 222.  As support its reasoning, the Court noted that: (1) "the case was resolved prior to extensive participation in the due processes hearing, primarily through negotiations, and memorialized in a four-page Consent Order," id. at 222; (2) "although the plaintiff's physical and developmental impairments posed a level of complexity, . . . the case did not present any novel legal issue, and it did not require extensive legal briefing or discovery," id. at 221; and (3) "the plaintiff presented only one

witness at the hearing before the hearing was aborted so the parties could discuss settlement," id. at 222.[5]

For the following reasons, the Court finds that the plaintiffs have failed to show that Hassan is entitled to the enhanced LSI Laffey rates.  The plaintiffs' evidentiary submissions in this case are similar to what the Circuit in Eley held were insufficient to justify using the enhanced Laffey rates, the plaintiffs having submitted as support for such an award, "the LSI Laffey Matrix, Kavanaugh's declaration explaining the LSI Laffey Matrix[,] and [the plaintiffs'] lawyer's verified statement averring that [she] charged [her] paying clients the rates in the LSI Laffey Matrix."  Compare 793 F.3d at 104, with Pls.' Mot., Ex. 4 (LSI Laffey Matrix), and Kavanaugh Decl., and Pls.' Mot., Ex. 6 (Verified Statement of Douglas Tyrka ("Tyrka Statement")) ¶ 13.[6]  Furthermore, like in Eley, the plaintiffs have not directed the Court to any IDEA cases "that ha[ve] employed the LSI Laffey Matrix[]."  793 F.3d at 104.  Indeed, "since Eley, . . . courts in this jurisdiction have interpreted the decision as strongly suggesting that IDEA matters are infrequently comparable to complex federal litigation, and therefore, full [USAO] Laffey rates should not be awarded in such cases," Jackson-Johnson v. District of Columbia, No. 13-cv-00528 (TSC)(AK), 2016 WL 1267153, at *3 & n.3 (D.D.C. Mar. 31, 2016)

---

[5]  The Court also noted in Jay that the defendant "failed to respond to the plaintiff's counsel's overtures for an early resolution and did not respond to those attempts until the evening before the scheduled administrative hearing."  75 F. Supp. 3d at 222.  This failure, the Court concluded, "directly contributed to an increased level of complexity of this case, which would not have occurred if plaintiff's counsel had not . . . been required to prepare for the administrative hearing."  Id.

[6]  Hassan's verified statements do not state that she charges her paying clients the full LSI Laffey rates.  See generally Pls.' Mot., Ex. 3 (First Hassan Statement); Pls.' Reply Br., Ex. 1 (Verified Statement of Kiran Hassan ("Second Hassan Statement")).  However, although Hassan represents that she "is the sole owner of Hassan Law Firm, LLC, the law firm that has served as counsel for the [p]laintiffs in the administrative proceedings in this matter," Pls.' Mot., Ex. 3 (First Hassan Statement) ¶ 2, Douglas Tryka of Tyrka & Associates is listed as counsel of record and has signed the relevant pleadings and other documents, see, e.g., Compl. at 3; Pls.' Mot. at 1; Pls.' Mem. at 14.  Accordingly, even though the plaintiffs have not explained the discrepancy between Tryka's being listed as counsel of record and Hassan's assertion that "the parties are only litigating over fees for the work of Hassan Law Firm," Pls.' Reply Br. at 3 n.2, the Court will treat Tryka's verified statement as proffered evidence that Hassan charges her paying clients the LSI Laffey rates.

(collecting cases), let alone full LSI <u>Laffey</u> rates, <u>see</u> <u>Salazar ex rel. Salazar v. District of</u>

<u>Columbia</u>, 809 F.3d 58, 64 (D.C. Cir. 2015) ("[I]n the particular context of IDEA claims, there is

a submarket in which attorneys' hourly fees are generally lower than the rates in either of the

<u>Laffey</u> Matrices." (citing <u>Eley</u>, 793 F.3d at 105)).  Accordingly, the Court declines to apply the

LSI <u>Laffey</u> Matrix but, instead, will adhere to its longstanding practice of using the USAO

<u>Laffey</u> Matrix as a guide and evaluating "on a case-specific basis what amount of attorneys' fees

should be awarded."  <u>Salmeron</u>, 77 F. Supp. 3d at 211 (citation omitted).

      The plaintiffs counter that they submitted "six verified statements . . . directly fulfilling

the evidentiary requirement[] in <u>Eley</u>," Pls.' Reply Br. at 4, which show that the plaintiffs'

"requested rates are in line with those prevailing in the community for similar services," 793

F.3d at 104.  This counterargument is unavailing.  <u>Eley</u> requires the plaintiffs "to produce

satisfactory evidence—<u>in addition to [their] attorney's own affidavits</u>—that [their] requested

rates are in line with those prevailing in the community for similar services by lawyers of

reasonably comparable skill, experience, and reputation."  <u>Id.</u> (citation omitted).  Because Tryka

is, as counsel of record, the plaintiffs' attorney, his verified statement cannot satisfy the

requirement of producing evidence <u>in addition to</u> the attorney's own affidavits.  <u>See</u> Pls.' Mot.,

Ex. 6 (Tyrka Statement) ¶ 13.  Additionally, the plaintiffs submitted verified statements from six

other attorneys purporting to prove that the LSI <u>Laffey</u> rates prevail in IDEA litigation at the

administrative level.  <u>See</u> Pls.' Reply Br., Ex. 5 (Verified Statement of Nicholas Ostrem

("Ostrem Statement")); Pls.' Mot., Ex. 10 (Verified Statement of Maria G. Mendoza ("Mendoza

Statement")); Pls.' Mot., Ex. 11 (Verified Statement of Alana Hecht ("Hecht Statement")); Pls.'

Mot., Ex. 7 (Verified Statement of Diana M. Savit ("Savit Statement")); Pls.' Mot., Ex. 9

(Verified Statement of Domiento C.R. Hill ("Hill Statement")); Pls.' Mot., Ex. 8 (Verified

Statement of Charles Moran ("Moran Statement")).  Of these attorneys, however, only Moran

states that his firm has "adjusted its rates to match those in the . . . LSI Laffey [M]atrix."  Pls.'

Mot., Ex. 8 (Moran Statement) ¶ 11.  But see, e.g., Pls.' Mot., Ex. 9 (Hill Statement) (stating that

he has "restricted [himself] to requesting . . . the '75% USAO' [Laffey] rate").  Moreover, even

if all six of these attorneys had stated that they charged their paying clients the LSI Laffey rates,

their statements alone would still be insufficient to show that the LSI Laffey rates prevail in this

District because the plaintiffs have not adequately shown how many attorneys practice IDEA

litigation in this District and bill the LSI Laffey rates.  Therefore, the six verified statements may

not be representative of the overall market for attorney's fees in IDEA cases in this District.

Similarly, each of the six verified statements "fails to specify how many—numerically or

percentage-based—of [the attorneys'] clients actually pay . . . enhanced Laffey [] rates."  Def.'s

Reply Br. at 3–4.  This omission is significant because if the attorneys do not charge all of their

paying IDEA clients (assuming they have any) the LSI Laffey rates, or if they seldom charge

such rates in IDEA cases, there is an insufficient basis to infer that the enhanced rates prevail in

IDEA litigation.  Accordingly, the plaintiffs have failed to justify the use of "the inflated rates

contained in [the LSI Laffey] . . . [M]atrix."  Rooths, 802 F. Supp. 2d at 61 (citation omitted).

### b.      The Applicable USAO Laffey Rates

Having concluded that the USAO Laffey Matrix is a more appropriate measure of a

reasonable attorney's fee in IDEA cases, the Court must determine the applicable USAO Laffey

rates for each of the seven proceedings.  Although Hassan states that she graduated from law

school in 2001, the defendant contends, and Hassan does not contest, that "she did not start

practicing law until 2004."  Def.'s Mem. at 13; see also Tillman v. District of Columbia, 123 F.

Supp. 3d 49, 58 (D.D.C. 2015) (finding that Hassan "did not start practicing law until May

2004").  Where, as here, "there is a significant gap [in time] between the date [when] an attorney graduated from law school and when he or she actually began practicing law, it is the latter date that should control in setting his or her <u>Laffey</u> rate."  <u>Tillman</u>, 123 F. Supp. 3d at 59.  Consequently, the Court will use May 2004 as the starting date when calculating Hassan's experience for purposes of the USAO <u>Laffey</u> Matrix.  Therefore, Hassan had eight years of legal experience during the period when she provided legal services in all seven proceedings.

The next issue for the Court to address is whether to apply the USAO <u>Laffey</u> rates that were in effect in 2013, <u>supra</u> at 3, or the "rates at the time that work was performed," <u>supra</u> at 4.  The Court previously held in this case that it was "appropriate to award the plaintiffs' attorney[] an hourly rate . . . [based on] the <u>year</u> when the legal services were rendered," <u>Salmeron</u>, 77 F. Supp. 3d at 211, and stands by its earlier ruling.  Accordingly, the Court must independently determine Hassan's experience level and the applicable USAO <u>Laffey</u> Matrix rates for each of the seven subject IDEA proceedings.  So doing, the Court notes that the USAO <u>Laffey</u> Matrix defines a fiscal year as June 1 of a given year to May 31 of the following year and, for attorneys with eight to ten years of experience, awards $350, $355, and $360 for, respectively, fiscal years 2012, 2013, and 2014.[7]

**The Salmeron Proceeding**: Hassan rendered services to Salmeron from February 2013 to June 2013.  Pls.' Reply Br., Ex. 3 (Invoice) at 1–4.  From February 2013 to May 2013, the USAO <u>Laffey</u> rate for Hassan's level of experience, i.e., eight-to-ten years, is $355 and, for June 2013, the applicable rate is $360.

---

[7]  <u>See</u> U.S. Dep't of Justice, <u>Laffey Matrix—2003 – 2014</u>, https://www.justice.gov/sites/default/files/usao-dc/legacy/2013/09/09/Laffey_Matrix%202014.pdf.  The Court uses this version of the USAO <u>Laffey</u> Matrix because it was in effect at all times relevant to this case.  <u>See</u> U.S. Dep't of Justice, <u>USAO Attorney's Fees Matrix—2015 – 2016</u> at 2 n.4, https://www.justice.gov/usao-dc/file/796471/download.

**The Coleman Proceeding**: Hassan provided services to plaintiff Coleman from January 2013 to May 2013.  Id. at 5–9.  The applicable USAO Laffey rate for the entire period is $355.

**The Flythe Proceeding**: Hassan rendered services to plaintiff Flythe from May 2013 to September 2013.  Id. at 12–15.[8]  The applicable USAO Laffey rates are $355 for May 2013, and $360 for June 2013 to September 2013.

**The Wade Proceeding**: Hassan provided services to plaintiff Wade in May 2012, and from December 2012 to September 2013.  Id. at 18–22.  The applicable USAO Laffey rates are $350 for May 2012, $355 for December 2012 to May 2013, and $360 for June 2013 to September 2013.[9]

**The Everett Proceeding**: Hassan rendered services to plaintiff Everett from May 2012 to February 2013.  Id. at 24–26.  The applicable USAO Laffey rates are $350 for May 2012, and $355 for June 2012 to February 2013.

**The Coates Proceeding**: Hassan rendered services to plaintiff Coates from May 2012 to September 2012, Id. at 28–29.  The applicable USAO Laffey rates are $350 for May 2012, and $355 for June 2012 to September 2012.

**The Liriano Proceeding**: Hassan provided services to plaintiff Liriano from July 2013 to November 2013, id. at 31–33.  The applicable USAO Laffey rate for the entire period is $360.

---

[8]  Hassan also states that she provided services in this proceeding in May 2012.  Pls.' Reply Br., Ex. 3 (Invoice) at 12, 15.  However, as explained below, these billing entries are not sufficiently related to the Flythe proceeding to include them in Hassan's billable hours for that proceeding.  See infra at 23–24.

[9]  Hassan also states that she provided services in this proceeding in May 2012.  Pls.' Reply Br., Ex. 3 (Invoice) at 18.  However, as explained below, these billing entries are not sufficiently related to the Wade proceeding to include them in Hassan's billable hours for that proceeding.  See infra at 24.

### c. What Percentage of the Applicable USAO <u>Laffey</u> Rates to Award Based on the Specifics of Each Proceeding

As noted, "it is the general position of the undersigned to use the [USAO] <u>Laffey</u> Matrix rate as the appropriate measure of the prevailing market rate in IDEA cases and then evaluate on a case-specific basis what amount of attorneys' fees should be awarded." <u>Salmeron</u>, 77 F. Supp. 3d at 211. In making this determination when the underlying proceedings were litigated solely at the administrative level, this Court has considered the following nonexhaustive list of factors: (1) the length of the due process hearing; (2) the number of exhibits presented at the hearing; (3) the number of witnesses presented at the hearing; (4) the number of issues for the hearing officer to determine; and (5) the length of the hearing officer's determination. <u>See</u> <u>supra</u> pp. 11–12. Considering these factors, the Court proceeds to determine by what amount, if any, it must reduce the applicable USAO <u>Laffey</u> rates for each proceeding.

### i. The Salmeron Proceeding

In the first proceeding, Hassan spent eight hours participating in the due process hearing. Pls.' Reply Br., Ex. 3 (Invoice) at 3. The parties presented approximately forty exhibits during the hearing, Pls.' Mot., Ex. 1 (Determinations) at 21–23, and eight witnesses, <u>id.</u> at 20. The parties had to address six issues, <u>id.</u> at 3, and the hearing officer issued a nineteen-page determination, <u>id.</u> at 1, 19.

Although these facts are comparable to those in <u>Hammond</u>, in which the Court awarded the plaintiff's counsel 92% of the USAO <u>Laffey</u> rate, 2016 WL 1704116, at *8, this proceeding is slightly less involved than the due process hearing in <u>Hammond</u>. For instance, the hearing in <u>Hammond</u> was two hours longer and the and there were several more issues to address. <u>See</u> <u>id</u>. Accordingly, the Court will award Hassan 90% of the applicable USAO <u>Laffey</u> rates for the services provided in this proceeding.

### ii.     The Coleman Proceeding

In this proceeding, Hassan spent 3.6 hours at the due process hearing, Pls.' Reply Br., Ex. 3 (Invoice) at 8, after which the parties entered into a six-page consent order, Pls.' Mot., Ex. 1 (Determinations) at 24, 29.  Therefore, the Coleman proceeding is similar to <u>Jay</u>, in which "the case was resolved prior to extensive participation in the due processes hearing, primarily through negotiations, and memorialized in a four-page Consent Order."  75 F. Supp. 3d at 222. Therefore, as in <u>Jay</u>, the Court will award Hassan 75% of the applicable USAO <u>Laffey</u> rate.

### iii.    The Flythe Proceeding

In this proceeding, which was resolved with a three-page consent order, Pls.' Mot., Ex. 1 (Determinations) at 31–33, the record does not reflect that Hassan even attended a due process hearing, <u>see</u> Pls.' Reply Br., Ex. 3 (Invoice) at 12–15.  Thus, the Flythe proceeding appears to be even more straightforward than the due process hearing in <u>Jay</u>, in which "the plaintiff presented . . . one witness at the hearing before the hearing was aborted so the parties could discuss settlement."  75 F. Supp. 3d at 222.  As a consequence, the Court will award Hassan 65% of the USAO <u>Laffey</u> rates applicable to this proceeding.

### iv.     The Wade Proceeding

In this proceeding, Hassan spent eight hours participating in the due process hearing. Pls.' Reply Br., Ex. 3 (Invoice) at 22.  The parties presented approximately thirty exhibits during the hearing, Pls.' Mot., Ex. 1 (Determinations) at 36–38, and five witnesses, <u>id.</u> at 20.  The parties had to address between two and six issues, <u>see id.</u> at 36, 51–52, and the hearing officer issued a nineteen-page determination, <u>id.</u> at 34, 52.  Although these facts are comparable to those in the Salmeron proceeding, in which the Court awarded Hassan 90% of the applicable USAO <u>Laffey</u> rates, <u>see supra</u> at 17, they indicate that the due process hearing in this case was slightly

less involved than Salmeron.  For instance, in the Salmeron due process hearing, the parties presented approximately forty exhibits, supra at 17, whereas the parties in the Wade proceeding presented only thirty.  As a result, the Court will award Hassan 85% of the applicable Laffey rates for this proceeding.

### v.  The Everett Proceeding

In this proceeding, Hassan devoted seven hours participating in the due process hearing.  Pls.' Reply Br., Ex. 3 (Invoice) at 26.  The parties presented approximately thirty-seven exhibits during the hearing, Pls.' Mot., Ex. 1 (Determinations) at 71–72, and six witnesses, id. at 73.  The parties had to address six issues, id. at 64, 66–67, and the hearing officer issued a fifteen-page determination, id. at 55, 99.

These facts indicate that this proceeding was as complex as proceeding in Wade.  For instance, the hearing in Wade consumed eight hours, and the hearing in this proceeding lasted seven hours.  Likewise, five witnesses were presented during the Wade proceeding, and six were presented in this case.  Therefore, the Court will award Hassan 85% of the applicable USAO Laffey rates.

### vi.  The Coates Proceeding

In this proceeding, Hassan spent six hours participating in the due process hearing.  Pls.' Reply Br., Ex. 3 (Invoice) at 32.  The parties presented approximately twenty exhibits during the hearing, Pls.' Mot., Ex. 1 (Determinations) at 76–77, and five witnesses, id. at 76.  The parties had to address six issues, id. at 75–76, and the hearing officer issued a ten-page determination, id. at 74, 83.

These facts indicate that the Coates proceeding was somewhat less complicated than the Wade proceeding, in which the Court awarded Hassan 85% of the USAO Laffey rates.  For

instance, the due process hearing in the Wade proceeding lasted for eight hours, <u>supra</u> at 18, but only six hours in the Coates proceeding.  Likewise, the parties presented thirty exhibits in the Wade hearing, <u>supra</u> p. 18, but only twenty in the Coates hearing.  Accordingly, the Court will award Hassan 80% of the USAO <u>Laffey</u> rates applicable to this proceeding.

### vii.    The Liriano Proceeding

Finally, in this proceeding, Hassan spent six hours participating in the due process hearing.  Pls.' Reply Br., Ex. 3 (Invoice) at 35.  The parties presented approximately twenty exhibits, Pls.' Mot., Ex. 1 (Determinations) at 114, and six witnesses, <u>id.</u> at 115.  The parties had to address two issues, <u>id.</u> at 105, and the hearing officer issued a ten-page determination, <u>id.</u> at 103, 112.

These facts indicate that this proceeding was essentially as complex as the proceedings in Coates because both proceedings involved six-hour hearings, the presentation of approximately twenty exhibits, and the issuance of ten-page determinations.  Furthermore, while the hearing officer had to decide four more issues in Coates, the parties presented one more witness during this proceeding.  Therefore, as in Coates, the Court will award Hassan 80% of the applicable USAO <u>Laffey</u> rate in this case.

### d.    Calculation of the Final Hourly Rates

Having determined the appropriate percentages of the applicable USAO <u>Laffey</u> rates Hassan is entitled to receive for the services provided in the seven proceedings, the Court must multiply these percentages by the rates to calculate the final hourly rates (i.e., the amount of money per hour) Hassan is entitled to receive.  The Court's computations are provided in the chart below:

| Proceeding | Time Frame In Which Work Performed | Applicable Hourly Rate | Percentage of Hourly Rate Allowed | Hourly Rate Allowed |
|---|---|---|---|---|
| Salmeron | February 2013 to May 2013 | $355.00 | 90% | $319.50 |
| | June 2013 | $360.00 | 90% | $324.00 |
| Coleman | January 2013 to May 2013 | $355.00 | 75% | $266.25 |
| Flythe | May 2013 | $355.00 | 65% | $230.75 |
| | June 2013 to September 2013 | $360.00 | 65% | $234.00 |
| Wade | May 2012 | $350.00 | 85% | $297.50 |
| | December 2012 to May 2013 | $355.00 | 85% | $301.75 |
| | June 2013 to September 2013 | $360.00 | 85% | $306.00 |
| Everett | May 2012 | $350.00 | 85% | $297.50 |
| | June 2012 to September 2012 | $355.00 | 85% | $301.75 |
| Coates | May 2012 | $350.00 | 80% | $280.00 |
| | June 2012 to September 2012 | $355.00 | 80% | $284.00 |
| Liriano | July 2013 to September 2013 | $360.00 | 80% | $288.00 |

### 3.    The Reasonableness of the Number of Hours Expended

The next step in the analysis is for the Court to determine whether Hassan has requested a reasonable number of hours for work performed in the seven proceedings.  In making this determination, the Court may: (1) consider other cases as a guide regarding what constitutes a reasonable number of hours, Hammond, 2016 WL 1704116, at *7; (2) reduce or eliminate "excessive, redundant, or otherwise unnecessary" billing entries, Hensley v. Eckerhart, 461 U.S. 424, 434 (1983), including "vague time entries," A.C. ex rel. Clark v. District of Columbia, 674 F. Supp. 2d 149, 159 (D.D.C. 2009) (citing cases); and (3) delete entries that represent preliminary, administrative matters and that lack sufficient temporal proximity to the due process hearing, Hammond, 2016 WL 1704116, at *9.

### a.     The Salmeron Proceeding

Hassan seeks payment for 90.3 hours of work performed regarding the Salmeron proceeding.  Pls.' Reply Br., Ex. 3 (Invoice) at 4.  Of these hours, 74.9 cover work performed between February 2013 and May 2013, see id. at 1–4, and the remaining 15.4 hours cover work performed in June 2013, see id. at 4.  "Although [90.3] hours may be on the high end of what courts customarily award for successfully prosecuting an IDEA case at solely the administrative level, this total is within the range of reasonableness."  See Hammond, 2016 WL 1704116, at *9 (citation omitted).  Furthermore, the billing entries are reasonably detailed, id., and reflect minimal block-billing, see id. (not reducing hours when most of the time entries were not block-billed, even though "several tasks related to hearing preparation" were in fact block-billed); see also Westmoreland v. Prince George's County, No. 09–CV–2453 AW, 2013 WL 6629054, at *16 (D. Md. Dec. 17, 2013) (approving the number of hours requested by the plaintiff despite "an appreciable amount of block-billing," partly because the time entries were "reasonably detailed overall").  Accordingly, subject to further reductions discussed below, the Court will award Hassan $23,930.55 (74.9 x $319.50) for work performed between February 2013 and May 2013 and $4,989.60 (15.4 x $324.00) for work performed in June 2013, for a subtotal of **$28,920.15**.

### b.     The Coleman Proceeding

Hassan seeks reimbursement for 107.5 hours for work performed in connection with this proceeding.  Pls.' Reply Br., Ex. 3 (Invoice) at 11.  However, as evidenced by the Court's award of only 75% of the USAO Laffey rate for this proceeding, supra at 18, it was relatively straightforward, and 107.5 hours surpasses the number of hours this Court has approved in more complex IDEA proceedings.  For instance, in Hammond, the Court reimbursed the plaintiff's

counsel for 88.2 hours at an hourly rate of 92% of the USAO Laffey Matrix, 2016 WL 1704116,

at *9, showing that Hammond was more complex than this proceeding.  Likewise, in Jay, where,

as here, the Court awarded the plaintiff's counsel 75% of the USAO Laffey rate, see 75 F. Supp.

3d at 221–22, the plaintiff's counsel sought reimbursement for only 61.2 hours for the work

performed by his attorney, see id. at 222 ("Accordingly, the plaintiff is entitled to receive an

hourly rate of $232.00 per hour, for a total of $14,198.40.").  Therefore, the Court will reduce the

number of hours for which Hassan will be reimbursed for the Coleman proceeding to seventy-

five.  Beyond that, however, Hassan's time entries for this proceeding are reasonably detailed

and reflect minimal block-billing.  As a result, the Court will award Hassan **$19,968.75** [75 x

$266.25] for work performed in the Coleman proceeding.

### c.      The Flythe Proceeding

Hassan seeks reimbursement for 65.8 hours for this proceeding, Pls.' Reply Br., Ex. 3

(Invoice) at 17, which includes 6.5 hours for work performed in May 2012, id. at 12, 1.9 hours

for work performed in May 2013, id., and 57.4 hours for work performed from June 2013 to

September 2013, id. at 12–15.  The Court has already eliminated the 6.5 hours for work

performed in May 2012 because "the entries reflect that . . . this [work] was preliminary in nature

and not meaningfully related to . . . [Flythe's] filing of the . . . due process complaint."

Hammond, 2016 WL 1704116, at *9.  However, the Court finds the remaining 59.3 hours

reasonable because the corresponding billing entries are reasonably detailed and reflect minimal

block-billing, and because 59.3 hours is comparable with the number of hours that the Court has

approved for proceedings of comparable difficulty.  See Jay 75 F. Supp. 3d at 222 (finding 61.2

hours reasonable).  Therefore, the Court awards Hassan $438.43 (1.9 x $230.75) for work

performed in May 2013 and $13,431.60 (57.4 x $234.00) for work performed from June 2013 to September 2013, for a subtotal of **$13,870.03**.

### d.     The Wade Proceeding

Hassan seeks reimbursement for 101.5 hours for this proceeding, Pls.' Reply Br., Ex. 3 (Invoice) at 23, which includes 4.4 hours for work performed in May 2012, id. at 18, 40.5 hours for work performed between December 2012 and May 2013, id. at 18–19, and 56.6 hours for work performed between June 2013 and September 2013, id. at 19–22.  At the outset, the Court observes that the time entries for May 1, 2012 (1 hour) and May 17, 2012 (1 hour) are duplicative because they both seek reimbursement for "initial consultation with the parent regarding pursuing her claim that the student is not receiving the appropriate services as required by law."  Pls.' Reply Br., Ex. 3 (Invoice) at 18.  The Court will therefore exclude one of these two days from the number of reimbursed hours from May 2012, leaving 3.4 hours of work performed in May 2012, for which Hassan may be reimbursed.

Nor does the Court find the remaining 100.5 hours fully reasonable.  Although another member of this Court has approved an attorney's request for 97.3 hours on facts similar to those in this proceeding, see Sweatt v. District of Columbia, 82 F. Supp. 3d 454, 457, 461 (D.D.C. 2015) ("During the [one-day administrative] hearing, [the] plaintiff entered fifty-eight documents into evidence, and [the] defendant entered one document.  The hearing included the testimony of six witnesses, including two experts. . . .  [T]he Hearing Officer issued a decision in [the] plaintiff's favor."), Sweat is distinguishable because, in the Wade proceeding, the parties presented only thirty documents into evidence and five witnesses, supra at 18.  Therefore, the Court will reduce the number of hours for which Hassan will be reimbursed for work performed in the Wade proceeding from December 2012 to May 2013 to ninety hours.  The Court will

distribute this reduction proportionally across the 40.5 hours requested for work performed between December 2012 and May 2013 (40.5/97.1 x 7.1 = 2.96) and the 56.6 hours requested for work performed between June 2013 and September 2013 (56.6/97.1 x 7.1 = 4.14). Consequently, in addition to the 3.4 hours of work performed in May 2012, Hassan will be reimbursed for 37.54 hours (40.5 – 2.96) for the former period and 52.46 (56.6 – 4.14) for the latter period.  The Court finds these remaining hours reasonable and, subject to further reductions discussed below, will award Hassan $1,011.50 (3.4 x $297.50) for work performed in May 2012, $11,327.70 (37.54 x $301.75) for work performed between December 2012 and May 2013, and $16,052.76 (52.46 x $ 316.80) for work performed between June 2013 and September 2013, for a subtotal of **$28,391.96**.

### e.        The Everett Proceeding

Hassan seeks reimbursement for 61.3 hours for this proceeding, Pls.' Reply Br., Ex. 3 (Invoice) at 27, nine of those hours for work performed in May 2012, id. at 24, and 52.3 of those hours for work performed between June 2012 and September 2012, id. at 24–26.  The corresponding time entries are reasonably detailed and reflect minimal block-billing, and 61.3 hours is a reasonable amount of time to spend on a proceeding in which the Court awards 85% of the USAO Laffey rates.  Accordingly, subject to further reductions discussed below, the Court will award Hassan $2677.50 (9.0 x $297.50) for work performed in May 2012, and $15,781.53 (52.3 x $301.75) for work performed between June 2012 and September 2012, for a subtotal of **$18,459.03**.

### f.        The Coates Proceeding

Hassan seeks reimbursement for 59.9 hours for this proceeding, id. at 30, 20.3 of those hours for work performed in May 2012, id. at 28, and 39.6 of those hours for work performed

from June 2012 to September 2012.  The corresponding time entries are reasonably detailed and reflect minimal block-billing, and 59.9 hours is a reasonable amount of time to spend on a proceeding in which the Court awards 85% of the USAO Laffey rates.  Accordingly, the Court will award Hassan $5,684.00 (20.3 x $280.00) for work performed in May 2012 and $11,246.40 (39.6 x $284.00) for work performed from June 2012 to September 2012, for a subtotal of **$16,930.40**.

### g.      The Liriano Proceeding

Hassan seeks reimbursement for 65.4 hours for work performed between July 2013 and September 2013 in connection with this proceeding.  Id. at 35.  The corresponding time entries are reasonably detailed and reflect minimal block-billing, and 65.4 hours is a reasonable amount of time to spend on this proceeding, which corresponds with the time expended on the Everett proceeding.  Accordingly, subject to further reductions discussed below, the Court will award 80% of the USAO Laffey rate, or **$18,835.20** (65.4 x $288.00), for the work performed in the Liriano proceeding.

### 4.      Further Reductions to the Lodestars

Now that the Court has calculated the lodestars, supra Part III.A.3, the Court must consider whether to further reduce them based on the measure of success that the plaintiffs obtained on their due process complaints.  The defendant asserts that the Court should reduce the plaintiffs' fees "by at least 50%" because the plaintiffs did not receive all of the relief that they requested at the due process hearings.  See supra at 4 (summarizing the defendant's arguments).  The plaintiffs counter that the Court should not reduce the fees based on partial success because they "prevailed on the large majority of issues and because very little of the work expended was attributable only to the other issues."  Pls.' Reply Br. at 13.

26

Although, when ruling on a motion for attorney's fees, "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," Hensley, 461 U.S. at 433, "[t]he product of reasonable hours times a reasonable rate does not end the inquiry," id. at 434.  Rather, if "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." Id. at 436.  However, in many cases, "the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories[] [and m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." Id. at 435.  In such cases, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Id.  "There is no precise rule or formula for making these determinations," id. at 436, and therefore, "[t]he district court . . . may simply reduce the award to account for the limited success," id. at 436–37.  "The court necessarily has discretion in making this equitable judgment." Id. at 437.

Applying these principles, some members of this Court have reduced attorney's fee awards in IDEA cases based on a plaintiff's partial success.  See, e.g., McNeil v. Options Public Charter Sch., No. 12–0529 EGS/DAR, 2013 WL 791199, at *7 (D.D.C. Mar. 1, 2013) (magistrate's report and recommendation); A.S. v. District of Columbia, 842 F. Supp. 2d 40, 47 (D.D.C. 2012); B.R. ex rel. Rempson v. District of Columbia, 802 F. Supp. 2d 153, 165 (D.D.C. 2011).  In two of these cases, the court reduced the fee award by an amount directly proportional to the percentage of unsuccessful issues.  See McNeil, 2013 WL 791199, at *7 (magistrate judge recommendation for "a reduction of the number of hours for which fees [would] be awarded to

one-sixth of the number of hours claimed" because the plaintiffs' "success was limited to but one

of the six issues raised in the due process complaint"); <u>A.S.</u>, 842 F. Supp. 2d at 47 (imposing "a

reduction of 50 percent on the final award of attorneys' fees" because the "plaintiffs attained

only half of the relief they sought").   In the third case, the court relied on a similar rationale in

reducing the attorney's fees based on the plaintiffs' partial success.   <u>See</u> <u>Rempson</u>, 802 F. Supp.

2d at 165 (reducing "the plaintiffs' attorney's fee request by 50% based on the plaintiffs' degree

of success and the fact that the plaintiffs brought [an] unnecessary claim, which accounted for a

large part of the plaintiffs' IDEA action").   These cases appear to endorse the type of

"mathematical approach [of] comparing the total number of issues in the case with those actually

prevailed upon" that the <u>Hensely</u> Court criticized as a "ratio [that] provides little aid in

determining what is a reasonable fee in light of all the relevant factors."   461 U.S. at 435 n.11;

<u>see also</u> <u>id.</u> at 438 ("Given the interrelated nature of the facts and legal theories in this case, the

District Court did not err in refusing to apportion the fee award mechanically on the basis of

respondents' success or failure on particular issues.").

  Here, based on the partial success that some of the plaintiffs received at the due process

hearings, reducing some of the lodestars is appropriate.   As an initial matter, however, the Court

rejects the defendant's assertion that a 50% across-the-board reduction is proper.   As Hassan's

invoice reflects, <u>see generally</u> Pls.' Reply Br., Ex. 3 (Invoice) at 1–35, the defendant's position

overlooks the fact that much "of [Hassan's] time [was] devoted generally to the litigation as a

whole, making it difficult to divide the hours expended on a claim-by-claim basis."   <u>Hensley</u>,

461 U.S. at 435.   Furthermore, the defendant urges the Court to employ the discredited method

of mechanistically reducing attorney's fee awards by a percentage that equals the percentage of

unsuccessful claims or issues.   <u>See</u> Def.'s Cross-Mot. Summ. J. at 15–19 (asserting that the Court

should reduce the attorney's fee award for each proceeding by at least 50% based solely on the unelaborated observation that the plaintiffs did not prevail all of the issues for which they sought relief); Def.'s Reply Br. at 6 (conclusorily asserting that the plaintiffs were only "minimally successful at the administrative hearings").[10]

### a.    The Salmeron Proceeding

In this due process hearing, plaintiff Salmeron prevailed on one of six issues.  Pls.' Mot., Ex. 1 (Determinations) at 12, 19.  According to Hassan, "[l]ess than one-third of the work on the case was devoted to the relief not obtained."  Pls.' Reply Br. at 13.  Based on Salmeron's partial success at this hearing, as well as Hassan's acknowledgement that up to one-third of her work on the case was devoted to the unsuccessful issues, the Court will reduce Hassan's attorney's fee award for work performed on this proceeding by 25%.  Accordingly, attorney's fees totaling **$21,690.11** (75% of $28,920.15) are awarded for this proceeding.

### b.    The Wade Proceeding

In the due process hearing in this proceeding, the percentage of issues on which Wade prevailed is not entirely clear.  Compare Pls.' Mot., Ex. 1 (Determinations) at 36 (indicating that the case presented two core issues), with id. at 51–52 (indicating that the case presented as many as six issues).  In any event, the hearing officer determined that the student's "placement [did] not provide him [with] sufficient hours outside the general education setting, and . . . [did] not provide him the structure or support he require[d]," id. at 46, even though the hearing officer rejected Wade's request for "a full-time, separate, non-public, special education school," id. Hassan states that "[l]ess than 10% of the work on the case was dedicated to the compensatory

---

[10]   The defendant does not assert that the plaintiffs in the Coleman and Flythe proceedings only partially prevailed on their due process complaints, see Def.'s Mem. at 15–19, presumably because consent orders were entered in these proceedings, see supra at 18.  Therefore, the defendant is not asking the Court to reduce the attorney's fees awarded for these two proceedings based on partial success.  See generally Def.'s Mem.

education claim." Pls.' Reply Br. at 14. Based on Wade's partial success, as well as Hassan's

acknowledgment that up to 10% of the work in the case corresponded to the unsuccessful claim,

the Court will reduce the amount of attorney's fees for which Hassan is entitled to

reimbursement for this proceeding by 10%. Accordingly, attorney's fees totaling **$25,552.76**

(90% of **$28,391.96**) are awarded for this proceeding.

### c.     The Everett Proceeding

In the due process hearing in this proceeding, plaintiff Everett prevailed on one of five

issues. Pls.' Mot., Ex. 1 (Determinations) at 57–58, 64, 66–67. According to Hassan, "[l]ess

than 5% of the work on the case was devoted to the relief not obtained." Pls.' Reply Br. at 14.

Although Hassan's assertion that less than 5% of the work related to the four unsuccessful issues

again may seem implausible considering the 80% failure rate, the record reflects that there was a

common nucleus of fact between the successful issue and unsuccessful issues. See Pls.' Mot.,

Ex. 1 (Determinations) at 67 (discussing an individualized educational program ["IEP"] that the

hearing officer found adequate when determining that a subsequent IEP was inadequate).

Furthermore, Everett's degree of success in this proceeding parallels Wade's degree of success in

that proceeding. Based on these considerations, the Court will reduce the amount of attorney's

fees to which Hassan is entitled for work performed on this proceeding by 20%. Accordingly,

attorney's fees totaling **$14,767.22** (80% of **$18,459.03**) will be awarded for this proceeding.

### d.     Coates Proceeding

In the sixth due process hearing, plaintiff Coates largely prevailed on the two issues

submitted for determination, see id. at 75–76, 82, which included "the funding for [a] private

placement," Pls.' Reply Br. at 14. According to Hassan, "[l]ess than 10% of the work on the

case was devoted to the relief not obtained." Id. Because Coates largely prevailed on the two

issues submitted for determination, and because Hassan stated that she devoted less than 10% of her efforts to the relief not obtained, the Court will reduce the amount of attorney's fees to which Hassan is entitled for work performed on this proceeding by 9%. Accordingly, attorney's fees totaling **$15,406.66** (91% of **$16,930.40**) will be awarded for this proceeding.

### e.     The Liriano Proceeding

In the due process hearing in this proceeding, plaintiff Liriano prevailed on one of two issues considered by the hearing officer. See Pls.' Mot., Ex. 1 (Determinations) at 105, 109–11 (concluding that Liriano failed to meet her burden to establish that the District violated the IDEA by failing to conduct a functional behavioral assessment or develop a behavior intervention plan to address the student's attendance issues during the 2012–2013 school year, but that the District did violate the IDEA by making certain changes to the student's IEP in May 2013 that "were not reasonably calculated to confer educational benefit"). Hassan asserts that she has "carefully reviewed the bill and the rest of the file, and . . . stricken entries from the bill that were devoted to the unsuccessful claims," Pls.' Reply Br. at 14, and the record reflects that she has stricken six time entries. Compare Pls.' Mot., Ex. 2 (Obsolete Invoice) at 31–35 (entries totaling $76,736.00), with Pls.' Reply Br., Ex. 3 (Invoice) at 31–35 (entries indicating "NC" instead of dollar amounts and totaling $71,424.00). On these facts, the Court deems it appropriate to reduce Hassan's fee award for the Liriano proceeding by 25%, for a total of **$14,126.40** (75% x **$18,835.20**).

The preceding analysis shows that Hassan is entitled to the following amount of attorney's fees for each of the seven proceedings:

| Proceeding | Attorney's Fees Awarded |
|---|---|
| Salmeron | $21,690.11 |
| Coleman | $19,968.75 |
| Flythe | $13,870.03 |
| Wade | $25,552.76 |
| Everett | $14,767.22 |
| Coates | $15,406.66 |
| Liriano | $14,126.40 |

Hassan is therefore entitled to a grand total of **$125,381.93** in attorney's fees.

### 5.      Remaining Arguments

The preceding analysis addresses most of the parties' arguments.  However, the Court has yet to address the plaintiffs' request to order an attorney's fee petition for the time reasonably expended in obtaining the attorney's fee award ordered by the Court.  Further, the plaintiffs ask the Court to "order that the District pay an additional $4,000.00 for each delay of a month or part thereof in payment [of attorney's fees]," Pls.' Mem. at 14 (citation omitted), alleging that the District has a "long history of ignoring the timelines of orders for payment of attorneys' fees," id. (citations omitted).

The Court can readily dispose of these arguments.  In accordance with Kaseman, 444 F.3d at 640, the Court authorizes the plaintiffs to submit a petition for "additional fees for time reasonably devoted to obtaining attorney's fees," id.[11]  The plaintiffs may include a request for the allowable costs incurred in litigating the seven underlying proceedings.  See 20 U.S.C. § 1415(i)(3)(B)(i) (emphasis added) ("In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs[.]").

The Court declines, however, to consider the plaintiffs' request to order the defendant to "pay an additional $4,000.00 for each delay of a month or part thereof in payment [of attorney's

---

[11]  The parties are encouraged to resolve this remaining matter through negotiations to avoid the possibility of generating additional attorney's fees and costs resulting from the submissions of these additional filings.

fees]," Pls.' Mem. at 14 (citation omitted), because this argument is "inadequately developed," Westcott v. McHugh, 39 F. Supp. 3d 21, 31 (D.D.C. 2014) (Walton, J.) (citing Ry. Labor Execs.' Ass'n v. U.S. R.R. Ret. Bd., 749 F.2d 856, 859 n.6 (D.C. Cir. 1984)); see also Pls.' Mem. at 14 (making this argument in a single sentence); Pls.' Reply Br. at 17 (responding to the defendant's assertion that this argument is meritless in only two sentences).

Furthermore, this argument would fail even if the Court considered it.  The verified statements on which the plaintiffs apparently rely to buttress the assertion that the District has a "long history of ignoring the timelines of orders for payment of IDEA attorneys' fees," Pls.' Mem. at 14 (citation omitted), are too vague and conclusory to substantiate this assertion, see, e.g., Pls.' Mot., Ex. 11 (Hecht Statement) ¶ 13 (stating, without elaboration, that her "fees are insufficient to maintain [her] firm in a reasonable manner for many reasons, . . . [including the alleged fact that she experiences a] very long wait for fees through [IDEA] litigation").  Moreover, the district court cases that the plaintiffs cite to support this assertion, Pls.' Mem. at 14 (citations omitted), are nonbinding, Camreta v. Greene, 563 U.S. 692, 709 n.7 (2011) (citation omitted) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.").  It also bears mentioning that federal law authorizes the plaintiffs to collect "[i]nterest . . . on any money judgment in a civil case recovered in a district court."  28 U.S.C. § 1961(a).  Accordingly, the Court declines to prospectively order the defendant to pay for any potential delay in satisfying the judgment.

**B.    Juan Fernandez**

The plaintiffs also seek to recover attorney's fees for work performed by Juan Fernandez. The defendant argues that the plaintiffs "should not [be able to] bill the District for services

rendered by an educational advocate or consultant," Def.'s Mot. at 19 (citing Arlington, 548 U.S. at 300), and asserts that "Juan Fernandez . . . served as [an] educational advocate[] in each of the hearings comprising this action," id. at 20.  To buttress this argument, the plaintiffs state that, while Fernandez was "admitted to the DC bar on March 18, 2005, . . . his membership status is currently suspended for non-payment of dues."  Id. at 20 n.4 (citation omitted).  The plaintiffs respond that

> [t]he District is correct regarding [] Fernandez's recent status, though [] Fernandez has now fixed that problem.  But at almost all times relevant to this case, [] Fernandez was active as a dues-paying member.  The [p]laintiffs have now amended the bills to bill Mr. Fernandez at the paralegal rate for all other times.

Pls.' Reply Br. at 15 (citations omitted).

In Arlington, the Supreme Court held that "the terms of the IDEA overwhelmingly support the conclusion that prevailing parents may not recover the costs of experts or consultants."  548 U.S. at 300.  In the IDEA context, "educational advocates" are an example of such experts or consultants.  See McCallister v. District of Columbia, 21 F. Supp. 3d 94, 104 (D.D.C. 2014) (declining to award attorney's fees to individual identified as "an educational advocate" even though time entries were billed as "paralegal" services); see also SD v. Portland Public Schs., No. 13–cv–00152–JDL, 2014 WL 7046190, at *4 (D. Me. Dec. 11, 2014) (citations omitted) ("Although [the plaintiff] describes Ms. Kelly as a 'paraprofessional' and an 'educational advocate,' rather than an expert, the Supreme Court's opinion in Murphy makes clear that the costs related to her services are not authorized under the IDEA."); cf. Jay, 75 F. Supp. 3d at 223 (suggesting that one role of educational advocates is to "provide expert testimony" on behalf of the plaintiff at due process hearings).

Here, the plaintiffs' own evidence shows that Fernandez acted as an educational advocate, including testifying on behalf of the students, during six of the seven subject

proceedings: See Pls.' Mot., Ex. 1 (Determinations) at 20 (stating that Fernandez served as an "[a]dvocate" and a "[w]itness" during the Salmeron due process hearing); Pls.' Reply Br., Ex. 3 (Invoice) at 10 (Fernandez's time entry stating that he "[g]ave testimony [at the Coleman due process hearing regarding his] participation in IEP meetings and classroom observations of the student"); id. at 17 (Fernandez's time entry stating that he "[g]ave testimony [at the Flythe due process hearing regarding his] participation in IEP meetings and classroom observations of the student"); Pls.' Mot., Ex. 1 (Determinations) at 54 (stating that Fernandez was an "[e]ducational [a]dvocate" at the Wade due process hearing); Pls.' Reply Br., Ex. 3 (Invoice) at 23 (Fernandez's time entry stating that he attended the Everett due process hearing for six hours); Pls.' Mot., Ex. 1 (Determinations) at 76 (characterizing Fernandez as an "[e]ducational [a]dvocate" and stating that he "testified at the [Coates] hearing"); id. at 115 (stating that Fernandez served as both an "[e]ducational [a]dvocate" and "[w]itness" during the Liriano hearing).  Pursuant to Arlington, therefore, the Court declines to award Fernandez any fees for services provided in any of the seven proceedings.  548 U.S. at 300.[12]

---

[12] The plaintiffs appear to counter that Fernandez is entitled to reimbursement for work performed at the proceedings because he acted as an attorney, not an educational advocate.  Cf. Pls.' Reply Br. at 15.  But the description of the work Fernandez performed belies this assertion, as the act of testifying on behalf of a client is not typical of the role of an attorney.  See United States v. Matsa, 540 F. App'x 520, 523 (6th Cir. 2013) (stating that a "lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless . . . disqualification of the lawyer would work substantial hardship on the client" (citing ABA Model Rules of Prof'l Conduct 3.7(a)(3))).  Even if the plaintiffs took the position that, although Fernandez acted as an educational advocate with respect to certain tasks, he nonetheless acted as an attorney with respect to other tasks and is therefore entitled to reimbursement for the tasks performed in the capacity of an attorney.  But the "fee applicant bears the burden of establishing entitlement to an award, documenting the appropriate hours, and justifying the reasonableness of the rates."  Eley, 793 F.3d at 100.  The plaintiffs have made no effort to explain which billing entries in the invoice correspond to work that Fernandez purportedly performed solely in the role of an attorney, Pls.' Reply Br. at 15, and the Court cannot make this determination based upon the information provided in the plaintiffs' invoices, see Pls.' Reply Br., Ex. 3 (Invoice) at 4, 10–11, 16–18, 22–23, 26–27, 30, 33–35.  Moreover, Fernandez has not submitted an affidavit explaining the nature of the work he performed or why he is entitled to an award of attorney's fees despite serving as an educational advocate.  Therefore, the plaintiffs have not carried their burden of establishing that Fernandez is entitled to any attorney's fees.

The plaintiffs' claim for attorney's fees for work performed by Fernandez also fails because the Court has already determined what constitutes a reasonable overall attorney's fee award in the several proceedings in this case. See supra at 32 (awarding Hassan $125,381.93 in attorney's fees after a lengthy analysis). Admittedly, the Court's analysis applied only to Hassan, while the invoice that the plaintiffs submitted to substantiate their request for attorney's fees encompasses work performed by the "Hassan Law Firm." See Pls.' Facts at 1. The Court analyzed the plaintiffs' request for attorney's fees for work performed by Hassan separately, because doing so promoted clarity. Implicit in the Court's analysis, however, is the fact that based upon the evidence before the Court, any additional hours billed by Hassan's law firm, whether by Hassan or Fernandez, was unreasonable.

The plaintiffs request that Fernandez be reimbursed at a lower paralegal rate for work performed during the Everett proceeding, see Pls.' Reply Br., Ex. 3 (Invoice) at 26–27, because he "was [not an] active . . . dues-paying member" of the bar when he performed the services in that matter, see Pls.' Reply Br. at 15. However, Fernandez's "tasks . . . are not typical of paralegals," Anaheim Union High Sch. Dist. v. J.E., ___ F. App'x ___, ___, 2016 WL 695979, at *1 (9th Cir. Feb. 22, 2016), because, among other nonreimbursable tasks, see Pls.' Reply Br., Ex. 3 (Invoice) at 26–27, he "review[ed] [the student's] educational assessments," Anaheim Union, 2016 WL 695979, at *1. Furthermore, even if Fernandez acted as a paralegal, i.e., as "a person, qualified by education, training or work experience who [was] employed or retained by a lawyer, [or] law office, . . . and who perform[ed] specifically delegated substantive legal work for which a lawyer is responsible," Jay, 75 F. Supp. 3d at 223 (citation omitted), the plaintiffs have not, by affidavit or otherwise, "provided detailed information about [Fernandez's] education, training, and prior work experience," id. at 223–24. Accordingly, the Court declines to reimburse the

plaintiffs for any work performed by Fernandez in the Everett proceeding, whether as a purported paralegal or otherwise.

## IV.     CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the plaintiffs' motion for summary judgment and grants in part and denies in part the defendant's cross-motion for summary judgment.  Consequently, the defendant must pay the plaintiffs reasonable attorney's fees in the amount of **$125,381.93**.  Furthermore, the Court directs the parties to file supplemental briefing regarding whether the plaintiffs are entitled to additional attorney's fees and costs incurred in connection with litigating the entitlement to these expenses, and if so, in what amounts.[13]

**SO ORDERED** this 16th day of June, 2016.

REGGIE B. WALTON
United States District Judge

---

[13] The Court shall contemporaneously issue an Order consistent with this Memorandum Opinion.